IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

KELLY CHEATHAM, EXECUTRIX OF        *
THE ESTATE OF CHESTER BELL.         *
DECEASED,                           *
                                    *
                 Plaintiff,         *
vs.                                 *         No. 3:10cv00170 SWW
                                    *
                                    *
MODERN WOODMEN OF AMERICA,          *
                                    *
                 Defendant.         *

MEMORANDUM AND ORDER

Plaintiff Kelly Cheatham (Cheatham), executrix of the estate of Chester Bell (Bell),

deceased, brings this action against Modern Woodmen of America (Modern Woodmen), a

fraternal benefit society, challenging its payment to certain beneficiaries of the proceeds of an

annuity certificate owned by Bell that was on deposit with Modern Woodmen at the time of

Bell's death.[1]  Before the Court are cross-motions of the parties for summary judgment [doc.#'s

7, 11].  Responses to these motions have been filed and the matter is ready for resolution.  For

the reasons that follow, the Court grants Modern Woodmen's motion for summary judgment

[doc.#7] and denies Cheatham's motion for summary judgment [doc.#11].

I

Modern Woodmen issued an annuity certificate, Certificate No. 8134036 (Certificate), to

Bell in October 2006.  Bell named his wife, Marie Bell, as beneficiary of the Certificate but he

---

[1] Ark. Code Ann. § 23-74-101 defines a fraternal benefit society as follows: "Any incorporated society, order, or supreme lodge, without capital stock, including one exempted under § 23-74-704(a)(2), whether incorporated or not, conducted solely for the benefit of its members and their beneficiaries and not for profit, operated on a lodge system with ritualistic form of work, having a representative form of government, and which provides benefits in accordance with this chapter, is hereby declared to be a fraternal benefit society."

did not name a contingent beneficiary.  Marie Bell died approximately one month later, on

November 17, 2006.

In addition to the Certificate, Modern Woodmen's insurance contract with Bell consisted

of the application and the Articles of Incorporation and By-Laws of the Society (By-Laws) as

they existed at the time of issuance of the Certificate, or as later amended.  Section 22 of Modern

Woodmen's By-Laws controls payment of benefits in the event that the named beneficiary dies

prior to the death of the insured and a contingent beneficiary has not been named in the

Certificate:

> Sec. 22. **Prior Death of Beneficiary–Disposition of Benefits.**  If the death of any beneficiary designated by name in any certificate heretofore or hereafter issued shall occur prior to the death of the insured, the amount made payable to such deceased beneficiary shall be payable in the manner prescribed in said certificate; *provided, however,* that if said certificate contains no provision for such payment, then and in that event the amount made payable to such deceased beneficiary shall be payable in equal shares to the surviving beneficiaries entitled to take under said certificate.  *Provided, further,* if no beneficiary survives the insured, the amount made payable under said certificate shall be payable to the insured's surviving spouse; if no spouse survives, to the insured's children, equally, a child or children of a deceased child taking the share of the deceased parent; if none such, to the insured's mother; if no mother, to the insured's father; if no father, to the insured's surviving brothers and sisters, share and share alike; and if no brothers or sisters, to the insured's estate.  *The above notwithstanding, however,* if said certificate has been assigned in accordance with the provisions of Section 20 of these By-Laws, then the applicable provisions of said assignment, if any, shall control.  (Emphasis in the original)

Section 26 of Modern Woodmen's By-Laws establishes what is required to change the

beneficiary of a Certificate:

> Sec. 26. **Change of Beneficiary or Method of Payment.**  At any time while a certificate is in force and the insured is living, the beneficiary or the method of payment of benefits may be changed by filing written notice in form satisfactory to the Society at its Home Office.  When acknowledged in writing by the National Secretary the change will take effect on the date notice was signed, subject to any payment made or other action taken by the Society before such acknowledgment.

The Society may require that the certificate be presented for endorsement of any such change.

Any attempt to change the method of payment or the payee of the benefits of any certificate or rider by will or otherwise than by strict compliance with the provisions of these By-Laws shall be absolutely null and void.

The first paragraph of Section 26 of the By-Laws is incorporated into the Certificate issued to Bell.

On June 26, 2009, Bell executed his Last Will and Testament (Will) attempting to leave the proceeds of the Certificate (which had an approximate value of $106,000 according to the complaint) to Holly Crosby, Leroy Bell, and Kelly Bell Cheatham in equal shares.  The Will states: "I give, devise, and bequeath as follows: ... (c) my Modern Woodmen account to Holly Crosby, Leroy Bell, and Kelly Bell Cheaman [sic], to share and share alike."  Last Will and Testament of Chester Bell at ¶ IV.  Bell did not, however, file written notice with Modern Woodmen changing the beneficiary of the Certificate pursuant to Section 26 of the By-Laws.

On August 7, 2009, Bell died in Pocahontas, Randolph County, Arkansas.  At the time of his death, Bell had not followed the procedure set forth in Modern Woodmen's By-Laws in order to change the beneficiary of the Certificate.

By letter dated November 25, 2009, the attorney for Bell's estate, John Troesch (Troesch) notified Modern Woodmen of Bell's death and the fact that his Will had been admitted into probate by the Randolph County, Arkansas, Circuit Court for purposes of administering his estate.  Troesch stated in his letter that "[i]t is my position that the funds [of the Certificate] are ... an asset of Mr. Bell's Estate and are to be distributed in accordance with orders of the Circuit Court."  Subsequently, on December 9, 2009, the Circuit Court of Randolph County, Arkansas, Probate Division, entered an order adjudicating the fact of Bell's death and admitting the Will

into probate.

By letter dated December 11, 2009, Laurie Nickels (Nickels) of Modern Woodmen's

Claims Department  responded to Troesch's November 25th letter, stating as follows:

> As you are aware, Mr. Bell held an annuity certificate with our Society at the time
> of his death.  The beneficiary designation provided for the proceeds to be paid to
> Marie Bell, wife.  From the information submitted, she predeceased the Insured.
>
> The proceeds of a certificate are payable according to the Society's By-Laws
> when the designated beneficiary predeceases the Insured and a contingent
> beneficiary is not named.  You will find an explanation of the By-Laws at the top
> of the enclosed Affidavit of Family Relationship.  The proceeds of a certificate
> are payable to the estate only if there are no surviving heirs.  From the
> information we have received, there are five daughters entitled to the proceeds.
>
> We intend to obtain the necessary information from the daughters to pay in the
> manner outlined with the Society's By-Laws.  Do not hesitate to contact me if you
> have any questions.

By letter dated December 18, 2009, Troesch responded to Nickels's letter noting that

there was no enclosure as stated, requesting a copy of the referenced enclosure, and requesting

copies of all other documentation upon which Nickels was relying in support of her contention

that the funds of Bell's Certificate are to be distributed as determined by Modern Woodmen.

Troesch went on to reiterate his position that "[s]ince the beneficiary design[at]ed by Mr. Bell

predeceased him, the funds must, therefore, be made a part of his estate to be distributed in the

manner determined by the Court."

By letter dated December 23, 2009, Nickels responded to Troesch's December 18th letter,

stating as follows:

> As indicated in our letter of December 11, 2009, Mr. Bell held an annuity
> certificate with our Society at the time of his death naming Marie Bell, wife, as
> beneficiary.  From the information submitted, she predeceased the Insured.
>
> In accordance with Section 22 of the Society's By-Laws, if a designated

beneficiary predeceases the Insured and a contingent beneficiary is not named, the proceeds are payable to specified heirs in a specific order.  You will find an explanation of Section 22 of the Society's By-Laws on the enclosed Excerpts from By-Laws.  Also enclosed is an Affidavit of Family Relationship outlining the heirs payable under the By-Laws.  The proceeds of the certificate are payable to the estate only if there are no surviving heirs.  From the information we have received, there are five daughters entitled to the proceeds.

We intend to make payment of the proceeds in accordance with the Society's By-Laws on January 4, 2010.  Do not hesitate to contact me if you have any questions.

As Marie Bell predeceased Bell with no contingent beneficiary having been named under the Certificate to receive the proceeds, Modern Woodmen, contrary to the express provisions of Bell's Will specifying that the proceeds of the Certificate were to be left to Holly Crosby, Leroy Bell, and Kelly Bell Cheatham in equal shares, paid the proceeds of the Certificate to the heirs specified in Section 22 of the By-Laws who, in this case, were Bell's surviving children—Kelly Arlene Cheatham, Janie Ann Clevenger (f/k/a Janie Bell), Judy Louise Broe (f/k/a Judy Bell), Tina Marie Wheeler (f/k/a Tina Bell), and Bonny Lynn Verello (f/k/a Bonny Bell).[2]  This action followed.

## II

Modern Woodmen moves for summary judgment on grounds, *inter alia*, that Bell failed to comply with Modern Woodmen's By-Laws when he attempted to change the beneficiary of the Certificate by Will and that Modern Woodmen fulfilled it contractual obligations to Bell when it paid the proceeds of the Certificate to the heirs specified in Section 22 of its By-Laws.

Cheatham, in turn, moves for summary judgment on the following grounds: (1) Arkansas

___

[2] Bell noted in his Will that he had five surviving children – all daughters – but that he has had no contact or communication with four of his five daughters and that "[a]lthough I am not unmindful that Bonnie Bell, Tina Bell, Judy Bell, and Janie Bell are my natural heirs, I decline to give, devise, or bequeath to any one or all of them any part of my estate."  Last Will and Testament of Chester Bell at ¶¶ I, VI.

law recognizes and enforces the right of an insured individual to change a beneficiary designee by one's Will, even when the insurer dictates a specific manner in which to designate a beneficiary, and Bell substantially complied with the terms of the policy regarding changing a beneficiary which is all that is required in accordance with Arkansas law; (2) even if Bell's Will is not recognized as effectively designating a beneficiary, Bell still complied with the terms of the policy regarding the method by which the insured may designate a beneficiary by notifying Modern Woodmen at its home office of the change by letter dated November 25, 2009; and (3) notwithstanding that Bell complied with the terms of the policy for changing his beneficiary, Arkansas Code Ann. § 23-74-402 (regarding benefit contracts of fraternal benefit societies) specifically provides that the benefits of the Certificate are payable to the estate.

A

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  The nonmoving party may not rest on mere allegations or denials of his pleading, but "must come forward with 'specific facts showing ... a *genuine issue for trial*.'"  *Id.* at 587 (quoting Fed.R.Civ.P. 56(e) and adding emphasis).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The

6

inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* (citation omitted).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

B

The Court first addresses Cheatham's argument that Arkansas law recognizes and enforces the right of an insured individual to change a beneficiary designee by one's will, even when the insurer dictates a specific manner in which to designate a beneficiary, and that Bell substantially complied with the terms of the policy regarding changing a beneficiary.[3]  Cheatham is certainly correct that under Arkansas law an insured generally may change the beneficiary of an insurance policy by Will and Testament, even when the insurance policy specifies the manner in which the change of beneficiary must be made:

> It is generally held that, where a life insurance policy reserves to the insured the right to change the beneficiary but specifies the manner in which the change may be made, the change must be made in the manner and mode prescribed by the policy, and according to most courts any attempt to make such change by will is ineffectual. *See generally* Wanda Ellen Wakefield, Annotation, Effectiveness of Change of Named Beneficiary of Life or Accident Insurance Policy By Will, 25 A.L.R.4th 1164 (1992). However, Arkansas law is contrary to the general rule: Arkansas holds that a change of beneficiary can in fact be accomplished in a will so long as the language of the will is sufficient to identify the insurance policy involved and an intent to change the beneficiary. *Pedron v. Olds,* 193 Ark. 1026, 105 S.W.2d 70 (1937); *see also Allen v. First National Bank,* 261 Ark. 230, 547

---

[3] The Court assumes for purposes of today's decision that Bell's Will was validly executed and that it represented his intent to change the beneficiary of his Certificate with Modern Woodmen.

7

S.W.2d 118 (1977).

*Nunnenman v. Estate of Grubbs*, 2010 Ark.App. 75, — S.W.3d — , 2010 WL 307025 (Ark.App.

Jan. 27, 2010).  However, the Arkansas Supreme Court considers annuity certificates issued by

fraternal benefit societies to be in a different class from ordinary life insurance policies:

> While the benefit certificates of fraternal benefit and mutual benefit associations insuring the lives of their members are contracts of insurance upon which such societies or associations are liable to the holders and beneficiaries of such certificates, nevertheless, the character of the contracts are wholly different from those of old line standard life insurance companies.  The fraternal, mutual, benefit associations are what their names imply. Their policy holders are the only members of the society. The obligations of their policies are discharged by assessments upon their members and all of the members are mutually and reciprocally interested in the conduct and management of the society according to the constitution and by-laws which they have framed and adopted for the government and conduct of the association to which they belong.
>
> Mr. Niblack, speaking of mutual benefit societies, says:
>
> "A society may provide that its contract of insurance may be assigned and transferred only with the consent of the society indorsed thereon. * * * The right of the contracting parties to thus prohibit an assignment of the certificate without the consent of the society cannot be seriously doubted, and in view of the restricted nature of the mutual benefit insurance, the propriety, if not the necessity, of such a condition is equally clear. The personal character of each holder of a certificate and the interest he may have in the life of the person thereby insured are essential elements in the contract of mutual indemnity." Niblack, *Accident Insurance and Benefit Societies*, p. 329, § 169.
>
> See, also, Vance on Insurance, p. 400, where the author, after setting forth the relation existing between mutual benefit societies and their members, says:
>
> "From this statement of the relation between the mutual association and its members, it is apparent that the contractual relation strikingly differs from that existing between regular insurance companies and their policy holders."

*Webster v. Telle*, 176 Ark. 1149, 6 S.W.2d 28, 32-33 (1928).  Based on the difference in the

contractual relationship between fraternal benefit societies and regular insurance companies, a

more formal process for members and policy holders is required to change the beneficiary of an

annuity certificate issued by a fraternal benefit society:

> "Manifestly, however, such a transaction requires some formalities for the protection of the company, the member and the beneficiary, and these formalities must be substantially complied with before the change of beneficiary becomes effective."

*Id.* (quoting *Robinson v. Robinson*, 121 Ark. 276, 181 S.W. 300 (1915)).  In this respect, "[t]he established rule and the one adopted in this state is that the change of the beneficiary cannot be made by the insured unless there is substantial compliance with the by-laws and regulations of the society." *Robinson*, 121 Ark. 276, 181 S.W. at 301 (citations omitted).  *See also Gibson v. Moore*, 187 Ark. 897, 63 S.W.2d 344 (1933) ("It is perfectly evident that any change of beneficiary in a policy of insurance issued by a fraternal benefit society must be done in substantial compliance with the constitution and by-laws of such society.").  Arkansas likewise provides by statute that "[t]he owner of a benefit contract shall have the right at all times to change the beneficiary or beneficiaries *in accordance with the laws or rules of the society* unless the owner waives this right by specifically requesting in writing that the beneficiary designation be irrevocable" and that "[t]hrough its laws or rules, a society may limit the scope of beneficiary designations and shall provide that no revocable beneficiary shall have or obtain any vested interest in the proceeds of any certificate until the certificate has become due and payable in conformity with the provisions of the benefit contract."  Ark. Code Ann. § 23-74-402(a)(1)(2) (emphasis added).

There is no question, then, that under Arkansas law, Bell was required to comply substantially  with Modern Woodmen's By-Laws to change the beneficiary of his Certificate. Bell, however, took no steps to comply with Modern Woodmen's By-Laws to change the beneficiary of his Certificate during his lifetime but instead attempted to effectuate a change of

beneficiary by his Will some six weeks before his death.  Bell's attempt to change the

beneficiary of the Certificate by Will shortly before his death simply did not in these

circumstances constitute substantial compliance with Section 26 of Modern Woodmen's By-

Laws, which provides that "[a]t any time while a certificate is in force and the insured is living,

the beneficiary or the method of payment of benefits may be changed by filing written notice in

form satisfactory to the Society at its Home Office" but that "[a]ny attempt to change ... the

payee of the benefits of any certificate ... by will or otherwise than by strict compliance with the

provisions of these By-Laws shall be absolutely null and void."

Cheatham, however, argues that Troesch's November 25, 2009 letter to Modern

Woodmen notifying Modern Woodmen of Bell's death, that his Will [representing Bell's intent

to leave his "Modern Woodmen account to Holly Crosby, Leroy Bell, and Kelly Bell Cheaman

[sic]"] had been admitted into probate for purposes of administering Bell's estate, and that "[i]t is

[his] position that the funds [of the Certificate] are ... an asset of Mr. Bell's Estate and are to be

distributed in accordance with orders of the Circuit Court," constituted sufficient written notice

of a change of beneficiary under Section 26 of Modern Woodmen's By-Laws.  To the contrary,

Section 26 required that written notice to Modern Woodmen's home office of a change in

beneficiary be made while Bell was living.  Troecsh's November 25, 2009 letter to Modern

Woodmen was some six weeks after Bell's death and, thus, did not provide proper written notice

under Section 26.  Moreover, the letter provided no notice that Bell was intending to change the

beneficiary of the Certificate but simply notified Modern Woodmen that it was Troesch's

opinion that the proceeds of the Certificate were payable to Bell's estate because there was no

living beneficiary to the proceeds of the policy, the named beneficiary having predeceased Bell.[4]

Finally, Cheatham argues that Arkansas Code Ann. § 23-74-402(c) (regarding benefit contracts of fraternal benefit societies) specifically provides that the benefits of the Certificate are payable to the Estate.  Section 23-74-402(c) provides:

> If, at the death of any member, there is no lawful beneficiary to whom the insurance benefits are payable, the amount of such benefits, except to the extent that funeral benefits may be paid as provided in subsection (b) of this section, shall be payable to the personal representative of the deceased insured. However, if the owner of the certificate is other than the insured, the proceeds shall be payable to such an owner.

As is evident from the language of this statute, Bell's estate would be entitled to the proceeds of the Certificate if there was no "lawful beneficiary" to whom the proceeds of the Certificate could be paid.  Here, however, there were "lawful beneficiaries" to the proceeds of the Certificate.  In this respect, Section 22 of Modern Woodmen's By-Laws specifies the heirs, relationships, or beneficiaries who are entitled to the proceeds of the Certificate if the designated beneficiary dies prior to the insured and the insured has not named a contingent beneficiary:

> [I]f no beneficiary survives the insured, the amount made payable under said certificate shall be payable to the insured's surviving spouse; if no spouse survives, to the insured's children, equally, a child or children of a deceased child taking the share of the deceased parent; if none such, to the insured's mother; if no mother, to the insured's father; if no father, to the insured's surviving brothers and sisters, share and share alike; and if no brothers or sisters, to the insured's estate.

This list of beneficiaries includes the "insured's children," which in this case were Bell's five living daughters at the time of his death – Kelly Arlene Cheatham, Janie Ann Clevenger, Judy Louise Broe, Tina Marie Wheeler, and Bonny Lynn Verello.  These five daughters were the

---

[4] Of course, it remains that Section 26 of Modern Woodmen's By-Laws provides that any attempt to change the payee of the benefits of any certificate "by will or otherwise than by strict compliance with the provisions of these By-Laws shall be absolutely null and void."

"lawful beneficiaries" of the proceeds of the Certificate pursuant to Section 22 of the By-Laws and Ark. Code Ann. § 23-74-402(c) accordingly does not apply.

III

For the foregoing reasons, the Court grants Modern Woodmen's motion for summary judgment [doc.#7] and denies Cheatham's cross-motion for summary judgment [doc.#11]. Judgment will be entered accordingly.

IT IS SO ORDERED this 4th day of May, 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE